```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                    CORPUS CHRISTI DIVISION

BEATRICE O. HINOJOSA,              §
                                   §
     Plaintiff,                    §
                                   §
vs.                                §    C.A. NO. C-05-399
                                   §
GUIDANT CORPORATION, et al,        §
                                   §
     Defendants.                   §
```

## ORDER OF REMAND

On this day came on to be considered Plaintiff's Motion to Remand the above-styled action for lack of subject matter jurisdiction. For the reasons discussed below, the Motion to Remand is GRANTED and the above-styled action is REMANDED pursuant to 28 U.S.C. § 1447(c) to the 28th Judicial District Court of Nueces County, Texas, where it was originally filed and assigned Cause Number 05-3658-A.

### I.  Background

On July 21, 2005, Plaintiff Beatrice Hinojosa ("Plaintiff"), a citizen of Texas, filed suit in state court against Defendants Cardiac Pacemakers, Inc., Guidant Corporation, Guidant Sales Corporation, and Guidant Puerto Rico Sales Corporation. Defendants Guidant Corporation ("Guidant") and Guidant Sales Corporation ("GSC") are both Indiana corporations with their principal places of business in Indianapolis, Indiana. Defendant Cardiac Pacemakers, Inc. ("CPI") is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. Only Defendant

Guidant Puerto Rico Sales Corporation ("GPRSC"), a Texas corporation, is a citizen of the same state as the Plaintiff.

Plaintiff's Petition alleged a litany of state law causes of action against the four Defendants, including: civil conspiracy, battery, breach of fiduciary duty, products liability, breach of express and implied warranty, fraud, constructive fraud, negligence, and intentional infliction of emotional distress. Plaintiff's claims all arise out of the design, manufacture, marketing, and sale of the Ventak Prizm 2 Model 1861 Implantable Cardioverter Defibrillator ("ICD"), a surgically implanted electronic device used to monitor and stabilize heart rhythms. Plaintiff had this model of ICD implanted at the Corpus Christi Heart Hospital on August 26, 2001. After installation of the ICD, however, Plaintiff alleges she learned that the device was defective and had been linked to the death of at least one patient. Plaintiff seeks equitable relief as well as damages for physical injuries and mental anguish resulting from the defect.

On August 11, 2005, within three weeks of being served with Plaintiff's Petition, Guidant removed the action to this Court, alleging that diversity jurisdiction existed pursuant to 28 U.S.C. § 1332. Specifically, Guidant alleged that the amount in controversy exceeded $75,000 and that the Plaintiff (a Texas citizen) and all *properly*-joined Defendants were citizens of different states. Guidant conceded that one of the Defendants,

GPRSC, was a Texas citizen and thus not diverse from Plaintiff. Nevertheless, Guidant contended that GPRSC's citizenship should be disregarded for the purposes of determining diversity jurisdiction because GPRSC had been improperly joined.

Guidant based its claim of improper joinder on a single argument: that GPRSC did not participate in the design, manufacture, or sale of the allegedly-defective ICD.  GPRSC, according to Guidant, is a wholly-owned subsidiary of Intermedics, Inc., which is itself a wholly-owned subsidiary of Guidant.  GPRSC sells products only in Puerto Rico and St. Croix, and does not sell or distribute products in Texas.  Therefore, Guidant reasons, Plaintiff cannot establish a cause of action against GPRSC and GPRSC's non-diverse status should be ignored for removal purposes.

**II. Discussion**

A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction.  See 28 U.S.C. § 1441(a).  The removing party--as the party seeking the federal forum--bears the burden of showing that federal jurisdiction exists and that removal was proper. See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002).  "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand."  Id. (citing Acuna v. Brown & Root, Inc., 200 F.3d 335, 339 (5th Cir. 2000) ("[D]oubts regarding whether removal

jurisdiction is proper should be resolved against federal jurisdiction.")).

Where the alleged basis for federal jurisdiction is diversity under 28 U.S.C. § 1332, this Court has subject matter jurisdiction if there is: (1) complete diversity of citizenship; and (2) an amount-in-controversy greater than $75,000. See 28 U.S.C. § 1332(a). Plaintiff, who claims physical injury, severe emotional distress, economic loss, and punitive damages, does not dispute that the amount in controversy is greater than $75,000. Therefore, the sole issue before this Court is whether GPRSC was improperly joined, such that the complete diversity-of-citizenship requirement is satisfied.

It is well-established that the diversity statute requires 'complete diversity' of citizenship. A district court generally "cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants." Corfield v. Dallas Glen Hills LP, 355 F.3d 853, 857 (5th Cir. 2003) (citations omitted). As noted above, it is undisputed that the Plaintiff in this case shares the same state of citizenship--Texas--as GPRSC. This shared citizenship between the Plaintiff and GPRSC will defeat federal jurisdiction unless Guidant can show that GPRSC was improperly joined to the suit.

### A. Improper Joinder

The Fifth Circuit has counseled district courts, in analyzing

diversity jurisdiction, to disregard the citizenship of parties that have been *improperly* joined. See Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 572-73 (5th Cir. 2004) (en banc) ("The doctrine of improper joinder rests on ... statutory underpinnings, which entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'") (citing 28 U.S.C. § 1441(b)). The rationale of this doctrine of improper joinder (also known as "fraudulent joinder")[1] is that the right of removal should not "be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Chesapeake & O. R. Co. v. Cockrell, 232 U.S. 146, 152 (1914). Rather, federal courts should be vigilant not to sanction devices intended to prevent the removal to a federal court where a defendant has that right." Smallwood, 385 F.3d at 573 (quotation omitted).

The burden of proving fraudulent joinder, however, is on the defendant, and that burden is a "heavy one." Griggs v. State Farm Lloyds, 181 F.3d 694, 699, 701 (5th Cir. 1999). Indeed, the Supreme Court has stated that:

> Merely to traverse the allegations upon which the liability of the resident defendant is rested, or to apply the epithet 'fraudulent' to the joinder, will not

---

[1] The term, "improper joinder," was recently adopted by the Fifth Circuit. See Smallwood, 385 F.3d at 571 n.1 ("We adopt the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past. Although there is no substantive difference between the two terms, 'improper joinder' is preferred.").

>    suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith.

Chesapeake, 232 U.S. at 152.

Therefore, the Fifth Circuit has stated that improper joinder may be established in one of two ways. The defendant either must show "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Smallwood, 385 F.3d at 573 (citation omitted). Only the second method of establishing improper joinder is at issue in this case, and the test under this second approach is whether "there is *no reasonable basis* for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id. (emphasis supplied).

When applying this test, a court must "resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party. [A court is] then to determine whether that party has any possibility of recovery against the party whose joinder is questioned." Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000) (quotation omitted). Generally, in determining the possibility of recovery under state law, a court conducts "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." Smallwood, 385, F.3d at 573. "If the plaintiff can survive a Rule

12(b)(6) challenge, there [generally] is no improper joinder." Id.

Guidant argues that the improper joinder test, as laid out above, is met in this case because the non-diverse defendant (GPRSC) did not participate in the design or manufacture of the ICD in question. Nor did GPRSC, according to Guidant, sell or distribute the ICD in Texas. Thus, Guidant reasons, Plaintiff has no possibility of recovery against GPRSC because GPRSC had no connection with this Plaintiff's particular injury.

Plaintiff, on the other hand, argues that, even if GPRSC had no role in the design, manufacture, or sale of the ICD, it still had knowledge of the defects in the device.[2] Similarly, Plaintiff contends that GPRSC was part of a general scheme among the four Defendants to conceal the ICD's defects and misrepresent its safety and effectiveness. Thus, Plaintiff claims that GPRSC can be held liable with the other Defendants under a civil conspiracy theory for their joint efforts to defraud Plaintiff, her doctors, and

---

[2] Plaintiff's grounds for imputing knowledge of ICD defects to GPRSC is somewhat convoluted, and is based mostly on the fact that certain agents of GPRSC also worked in the divisions of Guidant responsible for the marketing and manufacture of defibrillators. Whether Plaintiff will be able to prove this assertion is, for the purposes of the improper joinder analysis, irrelevant. All that matters is that Plaintiff has alleged this fact, and whether having alleged it, she has stated a claim for relief. See Smallwood, 385 F.3d at 573 (holding that joinder is generally proper if plaintiff has stated a claim upon which relief can be granted); see also Tuchman v. DSC Communications Corp., 14 F.3d 1061 (5th Cir. 1994) (when analyzing whether a plaintiff has stated a claim for relief, a court must "accept as true the well-pleaded factual allegations of the . . . complaint").

other similarly-situated persons. Thus, this Court will conduct a "12(b)(6)-type analysis" to determine whether Plaintiff has stated a claim against for civil conspiracy to defraud. Smallwood, 385 F.3d at 573.

### B. Civil Conspiracy to Defraud

"Civil conspiracy," in Texas, is not an independent cause of action. Rather, civil conspiracy is a "derivative tort," with which the plaintiff can hold one conspiracy participant liable for the torts committed by another conspiracy participant if those torts were committed in furtherance of an unlawful conspiracy. See Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996) (stating that a "defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable"); Berry v. Golden Light Coffee Co., 327 S.W.2d 436, 438 (Tex. 1959) (stating that "[w]hen a conspiracy is proven, each of the parties thereto is responsible for all acts done by any of the conspirators in furtherance of the [conspiracy]"). As a derivative tort, the plaintiff must "plead and prove another substantive tort upon which to base a civil conspiracy claim." Grizzle v. Texas Commerce Bank, 38 S.W.3d 265, 285 (Tex. App.--Dallas 2001) *rev'd in part on other grounds* 96 S.W.3d 240 (Tex. 2002). Conspiracy cannot be based on non-tortious conduct, such as breach of contract or warranty. Id. Similarly, because conspiracy requires specific intent, "one cannot agree or

conspire to be negligent." Juhl v. Airington, 936 S.W.2d 640, 644 (Tex. 1996). Where a plaintiff alleges a conspiracy to defraud, she "must prove both civil conspiracy and underlying fraud or concealment." Conger v. Danek Medical, Inc., 27 F.Supp.2d 717, 721 (N.D. Tex. 1998) (citing American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 438 (Tex. 1997)).

In the instant case, there can be little doubt that Plaintiff has successfully alleged a claim of fraud against at least one of the other named Defendants. In Texas, the elements of fraud are 1) a materially false representation; 2) that is known to be false when made; 3) the speaker intended the plaintiff to rely on the misrepresentation; 4) the plaintiff did rely; and 5) resulting injury to the plaintiff. American Tobacco, 951 S.W.2d at 436. The heart of Plaintiff's complaint against the four Defendants is that the Defendants knew about, and concealed, a dangerous defect in the ICDs which caused them to short-circuit and stop functioning. According to Plaintiff, Defendants, having full knowledge of the problems with the ICD, intentionally withheld that information and misrepresented the device's safety and effectiveness to Plaintiff, her doctors, other members of the public, and the Food and Drug Administration. Defendants allegedly made these misrepresentations knowing that Plaintiff, and others in her position, would rely on them and be exposed to life-threatening trauma. Plaintiff did rely on Defendants' misrepresentations by having the defective ICD

installed and was injured thereby. These allegations, if true and proved, would establish a claim of fraud against whichever of the Defendants was responsible for making the misrepresentations to the Plaintiff. Assuming, however, that GPRSC had no hand in selling or distributing the ICD in Texas, it is unlikely that Plaintiff ever relied on representations made by GPRSC. Therefore, it is unlikely that GPRSC could be held directly liable for fraud. In order to state a claim for relief against GPRSC, Plaintiff must also prove that it was part of a conspiracy.

In order to establish a civil conspiracy, the plaintiff must show "(1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the objective; (4) one or more unlawful, overt acts; and (5) proximate damages." Duzich v. Advantage Finance Corp., 395 F.3d 527, 530 (5th Cir. 2004). Stated differently, a civil conspiracy is "a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means." Tilton, 925 S.W.2d at 681. The agreement necessary to establish a conspiracy need not be formal, but "may be informal and tacit." Bradt v. Sebek, 14 S.W.3d 756, 766 (Tex. App.--Houston 2000). "The parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement." Triplex Communications Inc. v. Riley, 900 S.W.2d 716, 719 (Tex. 1995).

In this case, Plaintiff has alleged all the elements of a

-10-

civil conspiracy.  Plaintiff's Petition alleges that Guidant, GSC, CPI, and GPRSC "agreed . . . to conceal the fact that the Guidant defibrillator in question contained a defect which has caused a number of the devices to short-circuit and malfunction."  (Pl.'s Orig. Petition at 5.)  Later in Plaintiff's Petition, she alleges that "[a]t all times during the course of dealing between Defendants and Plaintiff, Defendants misrepresented that the ICD's were safe for their intended use . . . in order to induce Plaintiff to purchase Defendants' ICD."  (Pl.'s Orig. Petition at 9-10).  Finally, Plaintiff alleges that "[b]y reason of her reasonable and unavoidable reliance on Defendants' misrepresentations and omissions, Plaintiff has sustained . . . injuries."  (Pl.'s Orig. Petition at 10).  In these few, simple sentences, Plaintiff has alleged most of the elements of a civil conspiracy: a meeting of the minds, an objective to be accomplished, unlawful overt acts, and resulting injuries to the Plaintiff.

The only remaining conspiracy element is the requirement of "two or more persons."  This element presents a slightly thornier issue, as it is sometimes said that "a corporation cannot conspire with itself, no matter how many of its agents participated in the wrongful action."  Leasehold Expense Recovery, Inc. v. Mother's Work, Inc., 331 F.3d 452, 463 (5th Cir. 2003).  Similarly, courts have occasionally held that a parent corporation cannot conspire with its fully owned subsidiary as a matter of law.  Atlantic

Richfield Co. v. Misty Products, Inc., 820 S.W.2d 414, 420 (Tex. App.--Houston 1991). Because GSC and GPRSC are wholly-owned subsidiaries of Guidant, Defendants would seem to have an argument that GPRSC is not a distinct, legal person separate from Guidant, such that it could be held liable for conspiracy. There are, however, some cases that hold that a subsidiary does have a separate legal identity and may conspire with its parent corporation. See Grizzle, 38 S.W.3d at 282 (noting disagreement among Texas courts as to whether a corporation is capable of conspiring with its wholly owned subsidiary); See also Halloway v. Atlantic Richfield Co., 970 S.W.2d 641, 644 (Tex. App.--Tyler 1998) (holding that the claim that corporations cannot conspire with their subsidiaries applies only in the antitrust context and not in common law conspiracies); Atlantic Richfield Co. v. Long Trusts, 860 S.W.2d 439, 447 (Tex. App.--Texarkana 1993) (same); Metropolitan Life Ins., Co. v. La Mansion Hotels & Resorts, 762 S.W.2d 646, 652 (Tex. App.--San Antonio 1988) (rejecting defendants' argument that wholly-owned subsidiaries cannot conspire with their parents). Given that all ambiguities in state law must be resolved in favor of the non-removing party, Hart, 199 F.3d at 246, this Court finds that Plaintiff has alleged the existence of two or more parties to the conspiracy.

Plaintiff has, therefore, alleged all the elements needed to establish a claim for civil conspiracy to defraud against GPRSC.

Plaintiff has alleged facts sufficient to state a claim for fraud against Guidant, GSC, or CPI.  Similarly, Plaintiff has also alleged facts sufficient to claim that GPRSC conspired with the other Defendants to commit frauds of the kind perpetrated against the Plaintiff.[3]  While *proving* the facts alleged in the Petition will be a different matter altogether, Plaintiff has done enough at this stage to avoid a finding of improper joinder.

### III. Conclusion

At this stage of the proceedings, resolving all doubts regarding facts, law, and jurisdiction against the Defendants, the Court is convinced that Plaintiff has a reasonable basis for recovery under state law.  Therefore, the Motion to Remand is GRANTED and the above-styled action is hereby REMANDED pursuant to 28 U.S.C. § 1447(c) to the 28th Judicial District Court of Nueces County, Texas, where it was originally filed and assigned Cause Number 05-3658-A.

SIGNED and ENTERED this 7th day of September, 2005.

_____
Janis Graham Jack

United States District Judge

---

[3] Having found that Plaintiff has successfully stated a claim against GPRSC for conspiracy to defraud, this Court finds it unnecessary to analyze whether Plaintiff could also maintain a claim against GPRSC for negligence, or conspiracy to commit battery or intentional infliction of emotional distress.